**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| GIOVANNI LARA | : | |
| | : | |
| vs. | : | C.A. No. 05-287-ML |
| | : | |
| UNITED STATES OF AMERICA | : | |

## MEMORANDUM AND ORDER

Before the Court is Giovanni Lara's Petition for Writ of Error Coram Nobis pursuant to 28 U.S.C. § 1651 ("Coram Nobis Petition"), challenging the restitution portion of his sentence. For the reasons set forth below the Court denies relief.

## BACKGROUND

Following a 44-day jury trial Lara was convicted of carjacking, death resulting (in violation of 18 U.S.C. § 2119(3) and 18 U.S.C. § 2), and witness intimidation (in violation of 18 U.S.C. §1512(b)(3) and 18 U.S.C. § 2), which offenses occurred in 1994 and 1995. He was tried with five other defendants: George Sepulveda, Terrence Boyd, Shariff A. Roman, George Perry, and Eryn Vasquez, who were also convicted of various charges.

As part of the sentence imposed by this Court on October 8, 1997, Lara was ordered to make restitution, jointly and severally with co-defendant Perry, in the amount of $234,090 to the family of the victim, Temujin Vandergroen.[1] In imposing the restitution order, this Court noted that Lara had elected not to challenge the sum requested by the Vandergroen family. See United

---

[1] Lara was also sentenced to life imprisonment and a five-year term of supervised release on his carjacking conviction and ten years imprisonment, followed by three years of supervised release, on the conviction of witness intimidation. All prison terms were to run concurrently. These portions of the sentence are not at issue here.

States v. Lara, CR 95-75-ML, Transcript of Sentencing Hearing of Giovanni Lara conducted on October 8, 1997 ("10/8/97 Sent. Tr.") at 18.

Lara's conviction and sentence were affirmed on direct appeal, see United States v. Lara, 181 F.3d 183 (1st Cir. 1999), cert. denied, 528 U.S. 979 (1999). Thereafter, Lara moved to vacate his sentence under 28 U.S.C. § 2255. This Court denied relief, see Lara v. United States, CA 00-554-ML (D.R.I. Dec. 4, 2001)(slip op.), and the Court of Appeals affirmed. See Lara v. United States, No. 01-2745, Judgment (1st Cir. May 28, 2002).

Lara then moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2); that motion was likewise denied by this Court and the denial affirmed on appeal. See United States v. Lara, Dkt. No. 03-2689, Judgment (1st Cir. June 21, 2004). Lara thereafter filed a motion under Fed. R. Civ. P. 60(b) for relief from the judgment denying his § 2255 motion, which motion was denied by this Court. See Memorandum and Order dated September 7, 2005 in Lara v. United States, CA 00-554-ML. The instant Coram Nobis Petition thus marks Lara's fourth postconviction attempt to modify his federal sentence.

Lara originally sought to challenge his restitution sentence by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania (the "District Court"), where Lara is confined. See Giovanni Lara v. Joseph Smith, Dkt. No. 4:04-CV-2493 (M.D. Pa.).[2] The District Court dismissed that petition, stating that § 2241 was not the proper vehicle to challenge the restitution portion of Lara's

[2] The original petition named Joseph Smith, Lara's custodian, as respondent. The Court does not address on the correctness of this, as it does not affect the result here.

sentence. See id., Order dated December 29, 2004, aff'd 132 Fed. Appx. 420 (3d Cir. 2005).[3] In so dismissing that petition, the District Court did not reach the merits of Lara's claim concerning the restitution portion of his sentence.

Thereafter, Lara filed the instant Coram Nobis Petition in this Court. That Petition is based on two grounds: (1) ineffective assistance of counsel at sentencing due to counsel's failure (a) to object to this Court's imposition of restitution without making any factual findings concerning his ability to pay; and (b) to request that the Court clarify the term "joint and several" used when imposing the restitution obligation on him and his co-defendants; and (2) ineffective assistance of appellate counsel in not raising these issues during Lara's direct appeal.[4] The Government opposes the claims and further contends that coram nobis is not a proper vehicle for the relief Lara seeks.

## DISCUSSION

### A. Availability of Coram Nobis

The First Circuit has not addressed whether a petition for writ of error coram nobis may be used to obtain collateral relief of the restitution portion of a criminal sentence. See United States v. Sawyer, 239 F.3d 31, 38 (1st Cir. 2001) (assuming without deciding that writ of coram

---

[3] Unlike the its disposition of a similar restitution challenge filed by Lara's co-defendant Sepulveda, the District Court neither converted the habeas petition to one seeking a writ of corum nobis nor transferred the matter to this Court. Compare Order dated March 31, 2005 in George Sepulveda v. Joseph Smith, Civil No. 1:CV-04-2493 (M.D. Pa.).

[4] The Court notes that the claims and arguments set forth in Lara's papers in support of the instant Petition for Writ of Corum Nobis are virtually identical in substance to those set forth in the petition filed by his co-defendant George Sepulveda, which petition has been denied by this Court. See Memorandum and Order dated January 19, 2006 in Sepulveda v. United States, CA 05-138-ML [hereinafter "Sepulveda Memorandum and Order"].

nobis is available "to vacate a criminal conviction premised upon a fundamental error of law"). See also United States v. Barrett, 178 F.3d 34, 54-55 (1st Cir. 1999), cert. den. 528 U.S. 1176 (2000) (writ of coram nobis is not available in lieu of §2255 remedy to a petitioner challenging his sentence based on Jencks Act). However, at least one circuit has recognized that a writ of error coram nobis may be available to correct fundamental errors in the restitution portion of a sentence. See Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997)(coram nobis may be used to challenge restitution if requirements of writ are met). See also Kaminski v. United States, 339 F.3d 84,89-90 (2d Cir. 2003) (dicta by Calabresi, J. observing that coram nobis may be available in extraordinary circumstances to challenge non-custodial portion of sentence).

In view of these considerations and the characterization previously made by the District Court of a similar petition filed by Lara's co-defendant George Sepulveda, see Sepulveda Memorandum and Order at 3, this Court will assume without deciding that the instant Coram Nobis Petition properly raises Lara's claims. See Sawyer, 239 F.3d at 38 (assuming, without deciding, that coram nobis was available if prerequisites were satisfied). Those claims are in any event without merit and do not entitle him to the relief he requests.

A writ of error coram nobis may be issued only as an "extraordinary remedy" under circumstances that compel the issuance of the writ "to achieve justice." United States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247 (1954). The writ of error or notice "is limited to 'those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'" United States v. Michaud, 925 F. 2d 37, 39 (1st Cir. 1991), quoting United States v. Addonizio, 442 U.S. 178, 188, 99 S.Ct. 2235, 2242 (1979).

Determining whether to grant a writ of error coram nobis involves a three-part test:

> [A] petitioner must 1) explain her failure to seek relief from judgment earlier, 2) demonstrate continuing collateral consequences from the conviction, and 3) prove that the error is fundamental to the validity of the judgment.

United States v. Sawyer, 239 F.3d at 38, citing Hagar v. United States, 993 F.2d 4, 5 (1st Cir. 1993).

B. Application to Claims Raised

Here, none of Lara's claims come close to satisfying the prerequisites for coram nobis, and he fails to demonstrate any fundamental error which would render his sentence invalid.

1. Necessity of Findings of Fact for Restitution

The Victim and Witness Protection Act ("VWPA"), codified in pertinent part at 18 U.S.C. § 3663, requires a sentencing court to consider the economic circumstances of the defendant prior to ordering restitution for criminal offenses, including murder. See §3663(a)(1)(B). The Mandatory Victim Restitution Act ("MVRA"), enacted in 1996 as part of Antiterrorism and Effective Death Penalty Act (AEDPA), P.L. 104-132, title II, § 204(a), amended the VWPA to provide for mandatory restitution to victims of certain crimes, including murder, without any findings concerning a defendant's ability to pay. See 18 U.S.C. § 3663A. Congress intended that § 3663A "shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which defendant is convicted on or after the date of enactment of this Act [April 24, 1996]." See P.L. 104-132, § 211, as set forth in statutory note to 18 U.S.C. § 2248.

In his first claim, Lara asserts that his counsel should have requested that this Court make findings of fact concerning his ability to pay when imposing restitution. Lara further contends that because this Court did not make the required findings, it must have imposed restitution under the MVRA and that the retroactive application of the MVRA to his criminal conduct, which occurred prior to its enactment, violated the Ex Post Facto clause of the United States Constitution. The Government contends that restitution was properly imposed under the MVRA, which does not require any findings regarding a defendant's ability to pay restitution.

As this Court noted with respect to Sepulveda's restitution challenge, see Sepulveda Memorandum and Order at 6, it is unnecessary in this case to determine whether the MVRA could be retroactively applied to Lara's sentence, because even assuming that the VWPA applies, Lara's claims do not warrant coram nobis relief. See United States v. Licausi, 167 F.3d 36, 52 n. 4 (1st Cir. 1999) (court addressed restitution issues under VWPA rather than MVRA, where "the result is the same under either version and thereby to allay any ex post facto clause concerns").[5]

---

[5] The First Circuit has not had occasion to address directly whether the application of the MVRA to a restitution portion of a criminal sentence violates the Ex Post Facto clause. The majority of the circuits that have addressed this issue have found that the retroactive application of the MVRA *does* violate the Ex Post Facto clause. Compare United States v. Schulte, 264 F.3d 656, 662 (6th Cir. 2001) (because restitution is punitive in nature, the use of MVRA to impose restitution as part of sentence for criminal conduct committed prior to enactment of MVRA violated Ex Post Facto clause); United States v. Edwards, 162 F.3d 87 (3d Cir. 1998) (same); United States v. Siegel, 153 F.3d 1256, 1259-1261 (11th Cir. 1998) (same); United States v. Bapack, 129 F.3d 1320, 1327 n. 13 (D.C. Cir. 1997)(same); United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997); United States v. Baggett, 125 F.3d 1319, 1322 (9th Cir. 1997); and United States v. Thompson, 113 F.3d 13, 14 n. 1 (2d Cir. 1997)(same) with United States v. Newman, 144 F.3d 531 (7th Cir. 1998) (restitution deemed essentially a civil penalty and not criminal punishment; thus, application of MVRA did not violate Ex Post Facto clause); and United States v. Nichols, 169 F.3d 1255 (10th Cir. 1999)(same).

Cf. United States v. Rostoff, 164 F.3d 63 (1st Cir. 1999) (noting "the nature of restitution is penal, not compensatory" and thus Seventh Amendment right to jury trial does not apply to determinations of amount of restitution).

First, Lara does not explain, or even address, why he has not asserted his restitution challenge until some seven years after sentencing and more than four years after his conviction became final. Even assuming that his counsel failed to request findings of fact concerning his ability to pay, Lara was aware of the restitution order from the moment that it was imposed. He provides no explanation for the delay. Nor does he claim that he requested his counsel to demand that this Court make findings concerning his financial circumstances

Lara likewise fails to show that counsel's performance was objectively deficient. At Lara's initial sentencing hearing his counsel stated that he had advised Lara that he could challenge the restitution request but that Lara declined to do so. See United States v. Lara, CR 95-75, Transcript of Sentencing Hearing of Giovanni Lara conducted on September 23, 1997 ("9/23/97 Sent. Tr.") at 7-8. This explicit waiver of any challenge to the findings concerning the amount of restitution in the record, together with the absence of any suggestion that Lara had requested his counsel to demand that this Court make findings required under the VWPA, belies Lara's present ineffective assistance claim that counsel was remiss in not objecting to the restitution order.

Moreover, even if counsel's performance in this regard could somehow be deemed to have been objectively deficient, Lara has not shown any prejudice or collateral consequences of the Court's imposition of restitution, apart from the continuing restitution obligation itself. He does not allege, nor could he, that he is in danger of being held in contempt for failing to make restitution, given his incarceration. His unsupported, conclusory statement that the amount of restitution would have been less (see Coram Nobis Petition at 8) is not enough and is at odds with his explicit waiver to the amount of restitution made through counsel at the hearing.

Finally, there was simply no fundamental error in the Court's consideration of Lara's financial resources and ability to pay restitution. Although this Court did not address Lara's ability to pay, as it did his co-defendant Sepulveda's, see Sepulveda Memorandum and Order at 7-8, Lara explicitly waived any challenge to the amount of restitution, see 9/23/97 Sent. Tr. at 7-8, while Sepulveda made no such waiver. See United States v. Leppo, 141 F.3d 1150 (1st Cir. 1998) (unpublished table disposition) (statement by defendant's counsel that defendant was content "to leave any disposition order to the discretion of the court" deemed waiver of objections to court's evaluation of ability to pay and probably to amount of restitution).

It follows that counsel's failure to request factual findings concerning Lara's financial circumstances did not constitute ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984), much less a fundamental error rendering the entire proceeding irregular. See Michaud, 923 F.3d at 39; United States v. Barrett, 167 F.3d 34, 56 n. 20 (1st Cir. 1999). Thus, Lara is not entitled to coram nobis relief on this claim.

2. Meaning of "Joint and Several" Restitution Obligation

In the course of imposing the restitution obligation at sentencing this Court directed that Lara was to be "jointly and severally liable with his codefendant George Perry" for the restitution amount. 10/8/97 Sent. Tr. at 53. Lara claims that his counsel rendered ineffective assistance by failing to request that the Court explain what was meant by the term "joint and several." This claim suffers from the same failings as those listed above.

As with his first claim, Lara does not indicate any reason for not raising this issue earlier. There is no indication in the record that Lara questioned the meaning of the term at the time of sentencing. Moreover, he does not contend that he sought an explanation from his counsel or

that the result would be any different had he received an explanation. Thus, counsel's failure to request an explanation from the Court as to the meaning of "joint and several" liability does not constitute ineffective assistance, see Strickland, 466 U.S. at 687-688, and this claim likewise does not come close to raising an error "of the most fundamental character" so as to justify relief under coram nobis. Michaud, 923 F.2d at 39; see Barrett, 167 F.3d at 56 n. 20.[6]

3. Ineffective Assistance of Appellate Counsel

Lara's claims as to the ineffective assistance of appellate counsel are based upon the same alleged errors as those he alleges were committed by his trial counsel at sentencing – i.e., failure to raise issues concerning (1) whether this Court made findings of fact concerning Lara's ability to pay restitution; and (2) the need for the Court to explain the "joint and several" nature of the restitution obligation. Given the disposition of Lara's claims concerning trial counsel, these claims fail as well.[7]

The Court has reviewed Lara's other arguments and finds them to be without merit.

---

[6] Lara's reliance on United States v. Hunter, 52 F.3d 489 (3d Cir. 1995), on this point is, like Sepulveda's, inaccurate and misplaced. Contrary to his assertion, the remand in Hunter was ordered not due to the Court's statement that restitution was to be joint and several with co-defendants but for other reasons. Indeed, the Court there observed that governmental "interests in justice and rehabilitation should allow a district court to impose joint and several liability [for restitution] on multiple defendants." Id. at 494 (citations omitted).

[7] The Court notes that appellate counsel raised and argued numerous issues on Lara's behalf in the course of his direct appeal. See generally, United States v. Lara, supra.

CONCLUSION

Lara's claims do not come close to meeting the stringent requirements for a writ of error coram nobis. Accordingly, his Coram Nobis Petition is hereby DENIED.

So Ordered:

Mary M. Lisi
Mary M. Lisi
United States District Judge

January 20, 2006